IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BAHMAN YOUSEFZADEH, ET AL. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>WELLS FARGO BANK, N.A. )<br>)<br>Defendant. ) | NO. 3:22-cv-00330<br>JUDGE RICHARDSON |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss Complaint (Doc. No. 9, "Motion") and an accompanying memorandum in support thereof (Doc. No. 9-1, "Memorandum in Support"), to which Plaintiffs filed a response (Doc. No. 10, "Response"). Defendant thereafter filed a reply in support of the Motion (Doc. No. 14, "Reply"). For the reasons set forth below, the Motion hereby is granted in its entirety.

LEGAL STANDARDS

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

FACTUAL ALLEGATIONS

In their Response, Plaintiffs provide the following summary of the factual allegations of the complaint in this case as follows. The Court accepts the summary as an accurate recounting of those allegations, and accepts as true the facts as recounted in the summary.

> On or about 2018, the Plaintiffs were approved for a mortgage loan from the Defendants to refinance their personal residence located at 300 Avery Court, Nashville, Davidson County, Tennessee. At the time of closing of the mortgage referenced in paragraph 4 of this complaint, it was discovered that Cavalry SPV 1, LLC as assignee of Bank of America/FIA Card Services had recorded a judgment lien against real property owned by the Debtors at 300 Avery Court, Brentwood, TN 37027 in the amount of $24,999.99 of Record in Book 20121226-0118993, Register's Office for Davidson County, Tennessee.
>
> The Plaintiffs had Filed a petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Tennessee on January 21, 2013 and received a discharge on April 23, 2013, case number 313-00461. Cavalry SPV 1, LLC as assignee of Bank of America/FIA Card Services filed in the two unsecured claims in these proceeding, to wit: Claim 1-1 in the amount of $9,661.75 and claim 2-1 in the amount of of $38,087.09. These claims were discharged.
>
> As a result of filing the unsecured claims and not asserting secured status, Cavalry SPV 1, LLC as assignee of Bank of America/FIA Card Services had recorded a judgment lien against real property owned by the Debtors at 300 Avery Court, Brentwood, TN 37027 in the amount of $24,999.99 of Record in Book 20121226-0118993, Register's Office for Davidson County, Tennessee shall be released.

The aforesaid bankruptcy was administratively reopened to remove the Cavalry SPV 1, LLC as assignee of Bank of America/FIA Card Services, lien inappropriately of record. The Plaintiffs through the Defendant's online services negotiated a refinance of their loan with the Defendant. On February 8, 2022, the Plaintiffs paid to the Defendant $674.15 for a 90-day lock of an interest rate to refinance their existing loan with the Defendant for 15 years at 3.275%.

On February 14, 2022, the Defendant sent a letter to the Plaintiffs stating, without cause, stating that the loan was disapproved because there was an open bankruptcy by the Plaintiffs. The Defendant failed to recognize nor inquire that the reopening of the bankruptcy was administrative in nature solely for the intent of clearing impediments to the real estate title. The actions of the Defendant were in bad faith for the sole purpose of not honoring the agreed upon negotiated refinance rate. Said acts cost the Plaintiffs $157,059.00 in future interest.

## PROCEDURAL BACKGROUND

Based on these alleged facts, Plaintiffs filed a complaint (Doc. No. 1-1 at 1-4, "Complaint," or, when cited by Defendant, "Compl.") in Davidson County Chancery Court. The Complaint set forth two claims. The first claim was brought under the Tennessee Consumer Protection Act (Tenn. Code Ann. § 47-18-101 *et seq.*, "TCPA") on the premise that Defendant's alleged conduct constitutes "unfair and deceptive trade practices that affect the conduct of trade and commerce in violation of Tenn. Code Ann. §§ 47-18-104(a), 104(b)(5), 104(b)(7), and104(b)(35)." (*Id.* at 2). The second was a breach-of-contract claim, one premised on the allegations that Plaintiffs and Defendant "entered into a contract in order to provide refinancing of the Plaintiffs' home" and that Defendant "breached its obligations under the contract, including the covenant of good faith and fair dealing, by (a) injuring the Plaintiffs' right to receive the benefits of the mortgage contract, (b)

taking unconscientious advantage of the Plaintiffs, (c) failing to honor the Plaintiffs' reasonable contractual expectations with respect to the Loan."[1] (*Id.* at 3).

Defendant removed the action to this Court based on diversity of the parties' citizenship. (Doc. No. 1). Thereafter, it filed the Motion, wherein it asserts that each of Plaintiffs' two claims must be dismissed pursuant to Federal Rule of Criminal Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## THE PARTIES' COMPETING POSITIONS

Defendant's arguments in the Memorandum in support as to the respective claims are sufficiently brief that they are appropriately quoted in full here.

I.      *TCPA Claim*

As to Plaintiffs' TCPA claim, Defendant argues:

> "[The TCPA] does not apply to [c]redit terms of a transaction", so Plaintiffs' TCPA claim concerning Wells Fargo's denial of their refinancing must fail. T.C.A. § 47-18-111(a)(3). Courts in Tennessee have consistently held that alleged TCPA claims concerning loan refinancing and modifications do not meet the requirements for a claim under the TCPA[,] because this type of activity is expressly exempted by the TCPA. Because refinancing or modifying a loan would necessarily modify the credit terms of a transaction, Tennessee state and federal courts have routinely dismissed TCPA claims concerning loan refinancing and modification. *See Russell v. Household Mortg. Servs.*, No. M2008-01703-COA-R3CV, 2012 WL 2054388 at *6 (Tenn. Ct. App. June 7, 2012) (dismissing TCPA claim concerning the refinancing of home mortgages because "Ms. Russell's TCPA action in this case relates to credit terms and therefore was properly determined to be excluded by Tenn. Code Ann. § 47–18–111(a)(3)."); *Silvestro v. Bank of Am., N.A.*, No. 3-13-0066, 2013 WL 1149301, at *5 (M.D. Tenn. Mar. 19, 2013) ("The Court finds that renegotiation of a loan—that is, a loan modification application—involves the credit terms of a transaction and, therefore, the TCPA does not apply."); *Knowles v. Chase Home Fin., LLC*, No. 111CV01051JDBEGB, 2012 WL 13018539, at *7 (W.D. Tenn. Aug. 2, 2012) ("Because Chase's loan modification offers related to the terms of its extension of credit to Plaintiffs, they fall outside the ambit of the TCPA."); *Pugh v. Bank of Am.*, No. 13-2020, 2013 WL 3349649, at *7 (W.D. Tenn. July 2, 2013) (dismissing TCPA claim concerning allegations related to actions or

---

[1] Regrettably, the term "Loan" (the capitalization of which suggests that it is a coined term specifically defined in the Complaint) is not defined in the Complaint. The Court assumes that it is a reference to the loan that Defendant allegedly agreed to make to refinance the existing loan on Plaintiffs' home.

> statements concerning loan modification "because those actions would alter the parties' rights and obligations under the Note and Deed of Trust.").
>
> Here, Plaintiffs' TCPA claim arises out of a failed refinance of their loan. Because refinancing the loan would necessarily concern, and alter, the credit terms of a transaction, the claim should be dismissed under the plain terms of the statutory exemption. *See* T.C.A. § 47-18- 111(a)(3)).

(Doc. No. 9-1 at 4-5). In their Response, Plaintiffs likewise display the virtue of brevity (though not adequate proofreading or formatting), as their entire response to Defendant's above argument consists of the following:

> Defendant's first argument to dismiss this case is that the Tennessee Consumer Protection Act expressly excludes credit transaction solely because this was refinance. In *Beard v. Worldwide Mortgage Corp.*, 354 F.Supp.2d 789, 815 (W.D.Tenn.2005) and *Terry v. Community Bank of Northern Virginia.*, 255 F.Supp.2d 817, 823–24 (W.D.Tenn.2003) to hold that "[t]he TCPA has been applied to cases involving credit transactions where there are misrepresentations by defendants in the process of establishing or executing such a transaction." …. Rather, the court approvingly cited to a law journal article demonstrating that courts in many states have interpreted consumer protection statutes to include numerous banking activities, including the extension of credit. *Pursell*, 937 S.W.2d at 842 (citing [James R. Cox,] *State Consumer Protection or Deceptive Trade Practices Statutes: Their Application to Extensions of Credit and Other Banking Activities*, 105 Banking L.J 214 (1988)). Tenn. Code Ann. § 47–18–103(19). See *SecurAmerica Business Credit v. Southland Transportation Co., LLC.*, 2016 WL 1292087, at *8 (Tenn.Ct.App., 2016).
>
> In this case, the Defendant was a creditor in the original bankruptcy filed by the Plaintiffs in the United States Bankruptcy Court for the Middle District of Tennessee on January 21, 2013 and received a discharge on April 23, 2013, case number 313-00461; received notice of the discharge received by the Plaintiffs; and received notice of the Final Decree entered on May 13, 2013. It was at the original scheduled closing for the refinance with the Defendant that a improper lien from Cavalry SPV 1, LLC as assignee of Bank of America/FIA Card Services. At the Defendant's request, the Plaintiffs were told to take whatever action necessary to remove the erroneous lien. As a result of following the Defendant's instructions, the loan was not approved. The Defendant denied the Plaintiffs' loan for doing what was instructed.

(Doc. No. 10 at 2). Countering this argument with reciprocal conciseness, Defendant stated the following in its Reply:

> Without any explanation or analysis, Plaintiffs cite two cases from the Western District of Tennessee, neither of which involved a denied loan refinance, for the proposition that the TCPA has been applied to credit transactions that involved misrepresentations in connection with establishing credit. This argument

does not save Plaintiffs' TCPA claim for two reasons. First, Plaintiffs fail to allege any misrepresentations made by Wells Fargo. *See* generally, Compl. Instead, Plaintiffs allege that Wells Fargo wrote them a letter denying the refinance because of their open bankruptcy. Id., ¶ 11. Second, neither of the two Western District cases cited by Plaintiffs assessed whether Tenn. Code Ann. § 47-18-111(a)(3) exempted the application of the TCPA. *See Terry v. Cmty. Bank of N. Virginia*, 255 F. Supp. 2d 817, 823, 2003 WL 1698366 (W.D. Tenn. 2003) (assessing whether Tennessee's usury statute or the statute of limitations precluded TCPA claim); *Beard v. Worldwide Mortgage Corp.*, 354 F. Supp. 2d 789, 815, 2005 WL 281367 (W.D. Tenn. 2005) (assessing defendants' argument that Plaintiff failed to allege any tortious act).

      Instead, the courts that have assessed the statutory exemption in this context, including both the Tennessee Court of Appeals and the Middle District of Tennessee, have found that the TCPA does not apply to refinances or modifications of mortgages. *See Russell v. Household Mortg. Servs.*, No. M2008-01703-COA-R3CV, 2012 WL 2054388 at *6 (Tenn. Ct. App. June 7, 2012) (dismissing TCPA claim concerning the refinancing of home mortgages because "Ms. Russell's TCPA action in this case relates to credit terms and therefore was properly determined to be excluded by Tenn. Code Ann. § 47–18–111(a)(3)."); *Silvestro v. Bank of Am., N.A.*, No. 3- 13-0066, 2013 WL 1149301, at *5 (M.D. Tenn. Mar. 19, 2013) ("The Court finds that renegotiation of a loan—that is, a loan modification application— involves the credit terms of a transaction and, therefore, the TCPA does not apply."); *Kleto v. AmSouth Bank*, No. 3:04-CV-243, 2005 WL 2573379, at *5 (E.D. Tenn. Oct. 12, 2005) (denying TCPA claim regarding denied loan application, applying Tenn. Code Ann. § 47-18-111(a)(3) and finding that "where a party would Case otherwise have a claim under the TCPA based upon a deceptive act or practice of a bank in connection with a credit transaction, such claims fall outside the scope of the Act"). Plaintiffs' claim fundamentally concerns their attempted and denied credit transaction and their lost refinance terms, so the plain language of the TCPA precludes it.

(Doc. No 14 at 1-3).

II.     <u>Breach-of-contract claim</u>

The parties' respective arguments concerning the second claim likewise are sufficiently brief to set forth herein in full verbatim.

In the Memorandum in Support, Defendant argued:

      Tennessee does not recognize a stand-alone claim for a breach of the duty of good faith and fair dealing, so Plaintiffs' second claim must fail. Plaintiffs attempt to assert a claim that Wells Fargo breached its duty of good faith and fair dealing. (Compl. ¶ 21). However, Tennessee does not recognize a stand-alone claim

for a breach of the duty of good faith and fair dealing. *See, e.g., Voya Retirement Ins. & Annuity Co. v. Johnson*, No. M2016-00435-COA-R3-CV, 2017 WL 4864817, at *4 (Tenn. Ct. App. Oct. 27, 2017) ("Breach of the duty of good faith and fair dealing is not an independent cause of action."); *Lyons v. Farmers Ins. Exchange*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000) ("As to [plaintiff's] cause of action designated 'breach of covenant of good faith and fair dealings,' this is not a cause of action in and of itself but as a part of a breach of contract cause of action."). Instead, such claims must be brought as part of a breach of contract claim. See, e.g., *Voya*, 2017 WL 4864817, at *4; *Jones v. LeMoyne-Owen College*, 308 S.W.3d 894, 907 (dismissing claim for breach of implied covenant of good faith and fair dealing because "a claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; rather it is part of an overall breach of contract claim."); *Lyons*, 26 S.W.3d at 894; *see also Melville Capital, LLC v. Tennessee Commerce Bank*, No. 3:11-cv-00888, 2011 WL 6888476, at *10 (M.D. Tenn. Dec. 29, 2011) (same). When a complaint fails to assert a breach of contract claim, it also fails to assert a claim for breach of duty of good faith and fair dealing, which, in turn, requires dismissal. *See Berry v. Mortgage Electronic Registration Sys.*, No. W2013-00474-COA-R3CV, WL 5634472, at *7 (Tenn. Ct. App. Oct. 15, 2013) (finding that the plaintiff failed to allege a breach of contract and, therefore, her "claim of breach of duty of good faith and fair dealing [was] not cognizable, and Defendants [were] entitled to a dismissal of the claim on the pleadings"). Here, Plaintiffs fail to assert a breach of contract claim and therefore cannot make a standalone claim for the breach of duty of good faith and fair dealing. To assert a breach of contract claim, a plaintiff must allege, at a minimum, (1) an enforceable contract existed, (2) nonperformance amounting to a breach, and (3) damages. *See, e.g., ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2004) (listing the essential elements of a breach of contract claim under Tennessee law). Plaintiffs fail to allege the breach of any contractual provisions and even fail to identify the alleged contact [sic] at issue. Instead, the only specific breach Plaintiffs' allege is of the covenant of good faith and fair dealing. Compl. ¶ 21. Because Plaintiffs have only alleged a breach of the covenant of good faith and fair dealing, this claim is due to be dismissed. *See Berry*, 2013 WL 5634472, at *7 (Tenn. Ct. App. Oct. 15, 2013) (finding that the plaintiff failed to allege a breach of contract and, therefore, her "claim of breach of duty of good faith and fair dealing [was] not cognizable, and Defendants [were] entitled to a dismissal of the claim on the pleadings"); *Jones*, 308 S.W.3d at 907 (dismissing claim for breach of implied covenant of good faith and fair dealing because "a claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; rather it is part of an overall breach of contract claim.").

(Doc. No. 9-1 at 5-6). In their Response, with respect to this argument, Plaintiffs perhaps set a record for brevity, as their entire argument consisted of the following:

> As for the claim of breach of contract, the Plaintiffs fully complied with the loan contract. It was the Defendant who breached the contract by failing to honor the terms that the Plaintiff went to specific lengths to follow.

(Doc. No. 10 at 2).

To this, Defendant replied:

> Absent from the Complaint is any allegation of a particular contract at issue or a particular provision of a contract that Plaintiffs claim Wells Fargo has breached. In response to Wells Fargo's identification of such pleading deficiencies, Plaintiffs argue that they have "fully complied with the loan contract. It was the Defendant who breached the contract by failing to honor the terms that the Plaintiff[s] [sic] went to specific lengths to follow." Response at 2. Even with another opportunity, via the Response, to clarify the specific contract and provisions alleged to be breached, Plaintiffs have failed to do so. Instead, the only specific breach Plaintiffs allege is of the covenant of good faith and fair dealing. *See* Compl. ¶ 21. Accordingly, and for the reasons discussed in its Memorandum in Support of its Motion to Dismiss, Plaintiffs' standalone claim for breach of the covenant of good faith and fair dealing is due to be dismissed because Tennessee does not recognize such a claim.

(Doc. No. 14 at 3) (all brackets in original).

## ANALYSIS

This is the rare opinion in which the Court can set forth the parties' arguments verbatim and in full, then pronounce one side the winner based on the relative merits of the competing arguments without needing to do much exposition. As to each claim, the Court concludes with little difficulty that Defendant's argument is on point and based on an accurate assessment of applicable legal authority, and that Plaintiffs' response is of no material value in countering the persuasiveness of Defendant's argument.

I. *TCPA Claim*

As to the first claim, the Court agrees that the TCPA exempts, from the kinds of alleged circumstances for which a claim is cognizable under the TCPA, the circumstances at issue here. That is, the alleged circumstances here cannot support a cognizable claim for Plaintiffs under the

TCPA, because the alleged circumstances that supposedly support the claim related to "credit terms of a transaction" within the meaning of Tenn. Code Ann. § 47-18-111(a)(3). Such circumstances are expressly exempted from the coverage of the TCPA, *see id.*, and thus cannot support a claim under the TCPA.

Plaintiffs' response does nothing to show otherwise. Indeed, due to (among other things) Plaintiffs' failure to set off what apparently should have been a block quote and Plaintiffs' paraphrasing of a quoted source that took the form of an incomplete sentence, the Court initially could not even determine what Plaintiffs are claiming was said by whom. For instance, the Court initially could not even tell what Plaintiffs actually claim *Beard* and *Terry* held, and certainly neither of those cases includes the quoted language that immediately follows Plaintiffs' citation of them. The question then becomes, where did that language come from? Plaintiffs cite *Pursell* out of nowhere, using the short-form citation without ever introducing the case properly via a full citation, and seemingly suggesting that *Pursell* contains the quoted language—which actually it does not. Eventually, from its own efforts the Court was able to determine that (as was completely unclear based on how Plaintiffs put together this paragraph) the quoted language actually was from footnote 1 of the case cited at the end of the paragraph, *SecurAmerica Bus. Credit v. Southland Transportation Co., LLC*, No. W201500391COAR3CV, 2016 WL 1292087 (Tenn. Ct. App. Apr. 1, 2016). Plaintiffs' reliance on an unpublished intermediate (state) appellate court decision is problematic enough, but the problem is even worse for Plaintiffs: the so-called "hold[ing]" (which is actually an inaccurate description of the so-called "holding" here, a court's statement of what prior courts have done) upon which they rely—that "[t]he TCPA has been applied to cases involving credit transactions where there are misrepresentations by defendants in the process of establishing or executing such a transaction."—was from the trial court that was *reversed* by the

Tennessee Court of Appeals in *SecurAmerica Bus. Credit* and was a statement specifically *discounted* by the Tennessee Court of Appeals in that case. 2016 WL 1292087 at *5 n.1.

The Court could go on to address additional concerns regarding about Plaintiffs' response here (including regarding their confusing run-on quotation of consecutive footnotes from *SecurAmerica Bus. Credit*), but it need not gild the lily. Plaintiffs' response is patently inadequate to parry Defendant's adequately supported argument on this claim.

II. *Breach-of-contract claim*

The Court agrees with Defendant that to the extent that Plaintiffs' breach-of-contract claim is based on an alleged breach of the covenant of good faith and fair dealing ("covenant"), the claim fails. As Defendant accurately explains, the breach of the covenant is not the basis for an independent cause of action. While Tennessee courts have consistently found that an implied covenant of good faith and fair dealing applies to every contract, *Dick Broad. Co.*, 395 S.W.3d at 661, Tennessee courts have also consistently found that a breach of the duty of good faith and fair dealing "is not a cause of action in and of itself but [is] a part of a breach of contract cause of action."[2] *Univ. of the South II*, 2011 WL 1258104, at *18 (quoting *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000)); *see also Shah*, 338 F.3d at 572 ("Breach of the implied covenant of good faith and fair dealing is not an independent basis for relief.").

Plaintiffs fare no better to the extent that the breach-of-contract claim is based on the breach of a specific contractual term. The Court agrees with Defendant that "Plaintiffs fail to allege the

---

[2] The undersigned previously has "provide[d] his view about how breach of the covenant of good faith and fair dealing comprises 'a part' of a breach-of-contract claim[.]" *Evans v. Vanderbilt Univ. Sch. of Med.*, 589 F. Supp. 3d 870, 899 n. 18 (M.D. Tenn. 2022). In his view, the idea is that "if the defendant is properly considered to have breached the covenant of good faith and fair dealing—meaning, in essence, engaging in bad faith and unfair actions that prevent the occurrence of circumstances whereby the plaintiff would get the benefit of his bargain—the defendant cannot raise the non-occurrence of such circumstances as a defense to the plaintiff's breach of contract claim." *Id.; see also id.* at 900 (explaining the basis for this view). The covenant does not, by virtue of thus being "part of" a breach-of-contract claim, somehow aid Plaintiffs in their breach-of-contract claim in this case.

breach of any contractual provisions and even fail to identify the alleged cont[r]act at issue" and that "the only specific breach Plaintiffs' allege is of the covenant of good faith and fair dealing." (Doc. No. 9-1 at 6). Plaintiffs manifestly did nothing to persuade the Court otherwise in their Response; rather than identifying any contractual provision breached (or even the contours of the alleged contract, Plaintiffs merely asserted—without citing any supporting allegations—very vaguely that Defendant "fail[ed] to honor the terms" that "the Plaintiff [sic] went to specific lengths to follow." (Doc. No. 10 at 2). Defendant met its burden of showing why the Complaint lacked allegations sufficient to suggest the plausibility of relief for breach of contract, as required by *Iqbal* and *Twombly*, and Plaintiffs did nothing at all to rebut that showing.

In short, via the Memorandum in Support and the reply, Defendant has met its burden of showing why each of Plaintiffs' two claims in their Complaint should be dismissed under Rule 12(b)(6) for failure to state claim.

## CONCLUSION

For the reasons set forth above, the Motion (Doc. No. 9) is GRANTED, and this action is dismissed in its entirety. This is the final order in this case denying all relief. The Clerk SHALL enter judgment.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE